IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEFFREY T. GRAY, | ) CIVIL NO. 13-00547 JMS-KSC |
| | ) |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART |
| vs. | ) DEFENDANT'S MOTION TO THE |
| | ) EXTENT IT SEEKS SUMMARY |
| ONEWEST BANK, FEDERAL | ) JUDGMENT, AND DENYING |
| SAVINGS BANK, and DOES 1-10, | ) DEFENDANT'S MOTION TO THE |
| | ) EXTENT IT SEEKS RULE 11 |
| Defendants. | ) SANCTIONS, DOC. NO. 18 |
| _____ | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO THE EXTENT IT SEEKS SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION TO THE EXTENT IT SEEKS RULE 11 SANCTIONS, DOC. NO. 18

## I. INTRODUCTION

Plaintiff Jeffrey T. Gray ("Plaintiff") filed this action in the Third

Circuit Court of the State of Hawaii against Defendant OneWest Bank, Federal

Savings Bank ("Defendant"), alleging state law claims stemming from his default

on his mortgage loan. Plaintiff asserts that his default was caused by, among other

things, Defendant failing to send notices to his proper address, increasing his

monthly payment in violation of the mortgage note, and charging him hurricane

insurance and then failing to reverse the penalties and fees related to that insurance

after Plaintiff obtained his own insurance. Defendant subsequently removed the

action to this court.

Currently before the court is Defendant's Motion to Dismiss the First Amended Complaint ("FAC") Under Rule 11 or in the Alternative for Summary Judgment, and for an Award of Sanctions. Doc. No. 18. Defendant argues that the FAC is legally and factually baseless such that this action should be dismissed with prejudice as a sanction, or in the alternative, that summary judgment should be granted. Based on the following, the court finds that genuine issues of material fact exist as to some of Plaintiff's claims and therefore GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, and DENIES the Motion for Rule 11 sanctions.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

### *1.    The Mortgage Loan*

On July 16, 2007, Plaintiff obtained a $368,000 loan (the "Loan") from IndyMac Bank, MSB ("IndyMac"), secured by real property located at 15-1511 5th Avenue, Keaau, Hawaii 96749 (the "Property"). Doc. No. 19, Def.'s Concise Statement of Facts ("CSF") ¶ 1.[1] The Loan is evidenced by a Flex Pay Fixed/Adjustable Rate Note (the "Note") in the principal amount of $368,000.

---

[1] Where a fact is not in dispute, the court cites directly to Defendant's CSF.

*Id.* ¶ 2.  In turn, the Note is secured by a mortgage (the "Mortgage") encumbering the Property.  *Id.* ¶ 3.  Defendant is the record assignee of the Loan and is currently the holder of the Note and servicer of the Loan, having purchased IndyMac's servicing rights to the Loan.  *Id.* ¶ 4.  Defendant acquired the servicing rights for the Loan on March 19, 2009.  Doc. No. 19-1, Rebecca Marks Decl. ¶ 19.     *2.*

### *Required Payments Under the Mortgage Loan*

The Note provides for an initial fixed interest rate of 7.875%, which would change to an adjustable interest rate not greater than 12.875% or less than 2.875% beginning August 1, 2012.  Doc. No. 19-4, Def.'s Ex. 1 §§ 2, 4.

The Note provides the following regarding Plaintiff's required monthly payments:

> (B) Amount of My Initial Monthly Payments
> Each of my initial monthly payments will be in the amount of U.S. $1,334.13.  This amount is a [fifty percent] reduction of the payment amount that will be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate set forth in Section 2.  This amount may change.
> (C) Payment Changes
> My monthly payment will remain the same until September 1, 2012, the month after the first Change Date, and will not change again until after I have made my 120th scheduled monthly payment unless it is required to change in accordance with Section 4(F) below.

*Id.* § 3.  In turn, Section 4(F) provides:

> Limit on My Unpaid Balance: Increased Monthly
> Payment
> My unpaid balance can never exceed a maximum amount
> equal to [115%] of the principal amount I originally
> borrowed.  Because of my paying only limited monthly
> payments until I have made 120 scheduled monthly
> payments, the addition of unpaid interest to my unpaid
> balance under Section 4(E) above could cause my unpaid
> balance to exceed that maximum.  In that event, on the
> date that the payment of my monthly payment would
> cause me to exceed that limit, I will instead pay a new
> monthly payment equal to the interest only portion of the
> Full Payment if I have made less than 120 scheduled
> monthly payments.

*Id.* § 4(F).  In other words, the Note discloses that (1) the required $1,334.13

monthly payment is insufficient to pay the interest accruing on the Loan, resulting

in Plaintiff's principal balance increasing each month; and (2) if the unpaid interest

added to the balance causes the balance to exceed $423,200 (115% x $368,000),

Plaintiff must pay a new monthly payment equal to the interest-only portion of the

Full Payment.  *See also* Doc. No. 19, Def.'s CSF ¶ 14.

Between August 2007 and April 2011, Defendant applied Plaintiff's

monthly payments of $1,334.13 in accordance with the terms of the Note, and

deducted this amount from Plaintiff's bank account as Plaintiff had originally

requested.  *Id.* ¶¶ 5, 15; *see also* Doc. No. 19-7, Def.'s Ex. 4 (detailing payments,

interest, and fees on the Loan).  Each monthly payment of $1,334.13 was applied

to the interest accruing on the Loan, and because the $1,334.13 was insufficient to

pay the interest accrued, the remaining balance of the interest was added to the

unpaid principal balance of the Loan.  Doc. No. 19-7, Def.'s Ex. 4, col. D-F.  Thus,

from the inception of the loan, the principal balance on the Loan increased each

month.

### 3.    *Mailing Address for Plaintiff and Notices of Changes to Payments*

Both the Mortgage and Note provide that unless Plaintiff notified

Defendant of an address change, the address to which notices would be sent was

the Property Address.  *See* Doc. No. 19-4, Def.'s Ex. 1 § 8; Doc. No. 19-5, Def.'s

Ex. 2 § 15.  According to Plaintiff, IndyMac, Defendant's predecessor, sent

correspondence to Plaintiff's P.O. Box throughout the entirety of their course of

dealings (*i.e.*, until March 2009 when Defendant acquired the servicing rights).

Doc. No. 27-1, Pl.'s Decl. ¶ 6.[2]  Plaintiff further asserts that the U.S. Postal Service

---

[2] Defendant argues that the court should disregard Plaintiff's Declaration as self-serving and conclusory, and otherwise not supported by evidence.  *See* Doc. No. 29, Def.'s Reply at 4. A declaration is conclusory if it "do[es] not affirmatively show personal knowledge of specific facts," *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (internal quotation marks omitted), or if it "state[s] only conclusions, and not such facts as would be admissible in evidence." *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) (internal quotation marks omitted).  But a declaration is not conclusory where its facts are "neither in the form of legal conclusions nor speculative, but are material facts based on [the declarant's] personal recollection of the events."  *Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953, 960 n.4 (9th Cir. 2001). Where a declaration is not conclusory, supporting evidence is not necessary for purposes of summary judgment.  *See United States v. $223,178.00 in Bank Account Funds*, 333 Fed. Appx. 337, 338 (9th Cir. 2009) (citing *United States v. Two Tracts of Land*, 5 F.3d 1360, 1362 (9th Cir. 1993) (accepting affidavits from family members that lacked supporting documentation as sufficient to withstand summary judgment)).  Here, Plaintiff's Declaration contains factual statements which are within Plaintiff's personal knowledge.  And as to Plaintiff's specific

(continued...)

will not deliver mail to the Property Address. *Id.* ¶ 10.

Despite IndyMac sending correspondence to Plaintiff's P.O. Box, when Defendant took over the mortgage loan, Defendant sent mail to the Property Address. *See, e.g.*, Doc. No. 19-20, Def.'s Ex. 14. As a result, Plaintiff did not receive any mail from Defendant addressed to the Property Address. It was not until approximately June 6, 2011 that Plaintiff contacted Defendant to request that Defendant send notices to his P.O. Box address. Doc. No. 19, Def.'s CSF ¶ 11.[3] Starting June 6, 2011, Defendant began sending correspondence to Plaintiff's P.O. Box. *See* Doc. No. 19-12, Def.'s Ex. 6a. This change in mailing address falls in the midst of two events relevant to this action -- Defendant's purchase of hurricane insurance for the Property, and the increase of Plaintiff's required monthly payment.

///

///

---

[2](...continued)
assertion that IndyMac sent notices to Plaintiff's P.O. Box, Defendant has presented no specific evidence contradicting such assertion, instead submitting a single October 16, 2007 letter from IndyMac addressed to Plaintiff at his Property Address. *See* Doc. No. 19-9. Needless to say, this letter does not establish that Plaintiff did not notify IndyMac to send notices to his P.O. Box and/or that IndyMac sent other notices to Plaintiff's P.O. Box, particularly after October 2007. The court therefore rejects Defendant's request to disregard Plaintiff's Declaration.

[3] Although Plaintiff's Declaration is not clear as to the date he requested the address change, he does not dispute Defendant's CSF ¶ 11, and Defendant's June 6, 2011 letter is addressed to Plaintiff's P.O. Box. Doc. No. 19-12, Def.'s Ex. 6a.

### a.    Hurricane insurance

In December 2010, State Farm notified Defendant that Plaintiff's Property insurance did not include hurricane insurance as required by the Mortgage.  Doc. No. 19, Def.'s CSF ¶ 16.  Indeed, the Mortgage requires Plaintiff to maintain "hazard" insurance on the Property, which in Hawaii includes comprehensive windstorm (including hurricane) coverage ("hurricane insurance").  Doc. No. 19, Def.'s CSF ¶ 6.  The Mortgage further authorizes Defendant to purchase this insurance and charge the premium to Plaintiff's account if Plaintiff does not obtain it himself.  *Id.* ¶ 7.

On December 23, 2010 and January 20, 2011, OneWest sent Plaintiff letters to his Property Address stating that if Plaintiff did not obtain hurricane insurance for the Property, Defendant would acquire it and charge the premium to Plaintiff's account.  Doc. Nos. 19-18 - 19-19, Def.'s Exs. 12, 13.  On February 26, 2011, Defendant sent Plaintiff a letter to his Property Address stating that Defendant placed hurricane insurance on the Property and charged the premium to Plaintiff's account as an escrow advance.  Doc. No. 19-20, Def.'s Ex. 14.  Because these correspondence were sent to the Property Address as opposed to the P.O. Box, it appears Plaintiff did not receive them.

*b.     Increase in monthly payment and default*

On March 21, 2011, Defendant sent Plaintiff, again to his Property Address, an Adjustable Rate Change Notice informing him that his Mortgage was reaching the principal balance cap limitation (*i.e.*, 115% of the principal amount Plaintiff originally borrowed), and that the minimum payment would increase to $2,775.47 beginning on May 1, 2011.  Doc. No. 19-8, Def.'s Ex. 5.  The hurricane insurance purchased by Defendant did not cause the principal balance of the Loan to reach the 115% threshold or otherwise increase the monthly payment mentioned in the 2011 Arm Notice -- the cost of the hurricane insurance was not added to the unpaid principal, but instead treated as an escrow advance.  Doc. No. 19, Def.'s CSF ¶ 20.  Indeed, even after Defendant noted the hurricane insurance premium as an escrow advance, the monthly payments for March and April 2011 remained the same -- $1,334.13 -- with the shortfall in interest payments being added to the principal balance on the Loan.  Doc. No. 19-7, Def.'s Ex. 4 at ll. 155-158; *see also* Doc. No. 19-1, Marks Decl. ¶¶ 15-17.

Beginning in May 2011, Plaintiff's monthly payments increased to $2,775.47 as stated in Defendant's March 21, 2011 letter and per the terms of the Note.  Doc. No. 19, Def.'s CSF ¶ 25.  Plaintiff did not have sufficient funds in his bank account to cover the May 2011 monthly payment.  *Id.* ¶ 26.  As a result,

Plaintiff was charged a late fee of $138.77, Doc. No. 19, Def.'s CSF ¶ 29, as well as a $25.00 fee for the returned payment (shown as a "NSF Check" on the history for his loan).  Doc. No. 19-1, Marks Decl. ¶ 20; Doc. No. 19-7, Def.'s Ex. 4, l. 153.

On May 6, 2011, Defendant sent Plaintiff a letter to his Property Address noting the insufficient payment and that Plaintiff needed to bring the loan current.  *See* Doc. No. 19-10, Def.'s Ex. 5c.  Also on May 6, 2011, Defendant sent Plaintiff a second letter to his Property Address informing him that the escrow advance for the hurricane insurance ($9,463.07) would be spread over six months, increasing his monthly payment to $4,352.65 starting with his July 2011 payment.  Doc. No. 19-11, Def.'s Ex. 6.

### 4.    *Plaintiff Obtains His Own Hurricane Insurance*

As stated above, Plaintiff notified Defendant that mail must be sent to his P.O. Box on approximately June 6, 2011.  On August 2, 2011, Plaintiff contacted Defendant via telephone, where he was informed of the hurricane insurance Defendant obtained for the Property.  Doc. No. 27-1, Pl.'s Decl. ¶ 8. Plaintiff subsequently obtained his own hurricane insurance (at a much lower cost) with a retroactive date of December 17, 2010.  *Id.* ¶ 11.  Although Plaintiff's insurer faxed the policy documents to Defendant, *id.*, Defendant declined to accept the facsimile.  *Id.* ¶ 14.  As a result, Plaintiff faxed the insurance documents to

Defendant on August 31, 2011, September 11, 2011, and September 14, 2011. *Id.*

On September 14, 2011, Defendant confirmed receipt of the insurance documents

via telephone, and told Plaintiff that he would receive a refund for Defendant's

hurricane insurance and that "other credits would be handled by the mortgage

department." *Id.* ¶ 15. In a September 28, 2011 telephone conversation, Plaintiff

was told to contact Defendant's mortgage department to "follow up and get all the

late fees back." *Id.*

### 5. *Delinquency Notices and Threat of Foreclosure*

Between June and August 2011, Plaintiff made partial payments on

the Loan, remaining in arrears and incurring additional late fees and charges. Doc.

No. 19, Def.'s CSF ¶ 30.

On August 6, 2011, Defendant sent Plaintiff a delinquency notice to

his P.O. Box address informing Plaintiff that he was $10,547.55 in arrears on the

Loan. Doc. No. 19, Def.'s CSF ¶ 31. The August 6, 2011 letter further informed

Plaintiff that failure to cure the default would result in acceleration of the mortgage

with the full amount becoming due and payable. Doc. No. 19-13, Def.'s Ex. 7.

Plaintiff did not cure the default in the August 2011 notice, but continued to make

partial payments, thereby incurring additional late fees and charges. Doc. No. 19,

Def.'s CSF ¶ 31.

On October 6, 2011, Defendant sent Plaintiff another default notice to his P.O. Box. Doc. No. 19-15, Def.'s Ex. 9. Plaintiff again did not cure the default, and instead continued to make partial payments on the Loan, which resulted in additional late charges and fees being incurred on the Loan. *See* Doc. No. 19-7, Def.'s Ex. 4, ll. 1-153.

On February 2013, Defendant refused to accept any further partial payments from Plaintiff until he brought the Loan current. Doc. No. 19, Def.'s CSF ¶ 37. The Mortgage allows Defendant to take this action -- the Mortgage authorizes (1) the return of any payment or partial payments if such payment is insufficient to bring the Loan current; and (2) that the mortgagee may accept any payment or partial payment insufficient to bring the Loan current without waiving any of its rights to refuse such payment or partial payments in the future. *Id.* ¶¶ 8-9; *see also* Doc. No. 19-5, Def.'s Ex. 2 at 4 § 1.

According to Plaintiff, he has received several letters and phone calls threatening default and foreclosure. Doc. No. 27-1, Pl.'s Decl. ¶ 18. In a May 1, 2014 letter, Defendant explained the amounts due and stated that "[t]he first notice or filing required to commence foreclosure on your property has been made." Doc. No. 27-1, Pl.'s Ex. C at ECF Pg. 33 of 41.

## B.    Procedural Background

On September 25, 2013, Plaintiff filed this action in Third Circuit Court of the State of Hawaii, and on October 21, 2013, Defendant removed the action to this court.  Plaintiff's FAC asserts claims titled (1) Breach of Contract (Count 1); (2) Declaratory Relief (Count 2); (3) Injunctive Relief (Count 3); (4) Unfair Trade Practices (Count 4); (5) Breach of the Covenant of Good Faith and Fair Dealing (Count 5); (6) Negligence/Gross Negligence (Count 6); (7) Breach of Fiduciary Duty (Count 7); (8) Infliction of Emotional Distress (Count 8); and (9) Accounting (Count 9).  *See* Doc. No. 1-2.

On February 12, 2014, Defendant's counsel sent Plaintiff's counsel a letter explaining why they believed Plaintiff's FAC was meritless, and requesting that Plaintiff dismiss his Complaint with prejudice.  Doc. No. 19, Def.'s CSF ¶ 39.  On April 17, 2014, Defendant served Plaintiff an unfiled copy of its Motion, along with a letter requesting again that Plaintiff withdraw his FAC with prejudice.  *Id.* ¶ 40.

On May 9, 2014, Defendant filed its Motion to Dismiss the FAC with Prejudice under Rule 11 or in the Alternative for Summary Judgment on All Claims, and for an Award of Sanctions.  Doc. No. 18.  Plaintiff filed an Opposition on July 7, 2014, Doc. No. 27, and Defendant filed a Reply on July 14, 2014.  Doc.

No. 29.  A hearing was held on July 28, 2014.

## III.  <u>STANDARDS OF REVIEW</u>

### A.    Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

///

///

///

///

///

**B.     Federal Rule of Civil Procedure 11**[4]

Federal Rule of Civil Procedure 11(b) requires that parties present

arguments that are warranted by the law and non-frivolous:

> By presenting to the court a pleading, written motion, or
> other paper -- whether by signing, filing, submitting, or
> later advocating it -- an attorney or unrepresented party
> certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry
> reasonable under the circumstances:
>> (1) it is not being presented for any improper
>> purpose, such as to harass, cause unnecessary
>> delay, or needlessly increase the cost of litigation;
>> [and]
>> (2) the claims, defenses, and other legal
>> contentions are warranted by existing law or by a
>> nonfrivolous argument for extending, modifying,
>> or reversing existing law or for establishing new
>> law . . . .

Rule 11 applies to all pleadings, written motions and other papers presented to the

court.  Fed. R. Civ. P. 11(a).

Rule 11 "subject[s] litigants to potential sanctions for insisting upon a

---

[4] Although Plaintiff filed this action in state court, Rule 11 still applies to the FAC due to Plaintiff's continued presentation and advocacy of the FAC in his Opposition to Defendant's Motion.  *See Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *abrogated on other grounds by Fossen v. Blue Cross & Blue Shield of Mont., Inc*., 660 F.3d 1102 (9th Cir. 2011) (awarding Rule 11 sanctions for frivolous claim filed in state court where the plaintiff opposed a motion for summary judgment in federal court and thereby "continued to urge the allegations in his complaint [following] removal"); *see also Hurd v. Ralphs Grocery Co.*, 824 F.2d 806, 808-09 (9th Cir. 1987) ("While Rule 11 does not apply to actions taken in state court, sanctions may be imposed in appropriate circumstances for the defense of an action against a motion for summary judgment filed in the federal court.") (internal citation omitted).

position after it is no longer tenable . . . ." Fed. R. Civ. P. 11 advisory committee's

note (1993). In determining whether a party has violated Rule 11, the court applies

an objective reasonableness standard. *G.C. & K.B. Invs, Inc. v. Wilson*, 326 F.3d

1096, 1109 (9th Cir. 2003) ("The standard governing both the 'improper purpose'

and 'frivolous' inquiries is objective."). A showing of subjective bad faith is not

required. *Id.* ("The subjective intent of the movant . . . is of no moment."); *see also*

*Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (noting that sanctions cannot be

avoided by the "pure heart and empty head" defense).

## IV. <u>DISCUSSION</u>

The FAC asserts a panoply of claims based on allegations that

Defendant (1) increased Plaintiff's required monthly payment before the date

provided in the Note, (2) refused to accept Plaintiff's partial payments after

Plaintiff went into arrears on the Loan, (3) sent notices to the Property Address

instead of Plaintiff's P.O. Box, (4) purchased hurricane insurance, and (5) failed to

reverse all charges related to the hurricane insurance after Plaintiff obtained his

own insurance. Defendant argues that Plaintiff has no legal or factual basis for his

claims such that Rule 11 sanctions should be imposed, or in the alternative, that

summary judgment should be granted. The court first addresses whether Plaintiff

has established a genuine issue of material fact in support of any of his claims, and

then addresses the request for sanctions.

## A. Summary Judgment

### 1. Breach of Contract (Count 1)

Defendant argues that the undisputed facts fail to establish any breach of the Loan by Defendant or any damages by Plaintiff. Viewing the facts in a light most favorable to Plaintiff, the court agrees with Defendant in part.

#### a. Allegations for which no genuine issue of material fact exists

The court agrees that Plaintiff has failed to establish a breach to the extent he asserts that the Note does not allow Defendant to raise his monthly payment until September 1, 2012. *See* Doc. No. 1-2, FAC ¶ 13. And although Plaintiff's counsel conceded this point at the July 28, 2014 hearing, the court nonetheless explains its reasoning given that both the FAC and Plaintiff's Opposition suggest that Plaintiff is asserting such breach.

In particular, the terms of the Note explain that his monthly payment will change once the unpaid balance reaches a maximum amount equal to 115% of the original principal amount, which in this case, occurred in May 2011. Section 3(B) of the Note outlines that (1) Plaintiff's monthly payment is $1,334.13; (2) this amount is a fifty percent reduction of the amount sufficient to repay the unpaid principal in full on the Maturity Date in equal payments; and (3) the

$1,334.13 monthly payment "may change."  Doc. No. 19-4, Def.'s Ex. 1, § 3(B).

In turn, § 3(C) provides that "[m]y monthly payment will remain the same until

September 1, 2012, the month after the first Change Date, and will not change

again until after I have made my 120th scheduled monthly payment *unless it is*

*required to change in accordance with Section 4(F) below*."  (emphasis added).  In

other words, for the first five years of the loan Plaintiff's payment is $1,334.13,

then will change again and remain the same for another five years, *unless* the

monthly payment is required to change in accordance with § 4(F).  That the phrase

"unless it is required to change in accordance with Section 4(F) below" applies to

both the first and second five-year increments of the Loan -- and not only the

second five-year period -- is confirmed by § 3(B)'s statement that the $1,334.13

monthly payment "may change."  Finally, § 4(F) explains that Plaintiff's "unpaid

balance can *never* exceed a maximum amount equal to [115%] of the principal

amount I originally borrowed" (emphasis added), and that Plaintiff's "paying only

limited monthly payments . . . could cause my unpaid balance to exceed that

maximum," resulting in "a new monthly payment equal to the interest only portion

of the Full Payment."

      Thus, the Note allowed Defendant to change Plaintiff's monthly

payment prior to September 1, 2012 once his unpaid balance equaled 115% of his

original principal.  And the undisputed evidence establishes that this is exactly
what happened -- Plaintiff paid only $1,334.13 per month, resulting in his unpaid
balance increasing every month until it reached 115% of his original principal in
May 2011, where his monthly required payment increased.  *See* Doc. No. 19-7,
Def.'s Ex. 4.

   The court also agrees that Plaintiff has failed to establish a genuine
issue of material fact that Defendant was not permitted to purchase hurricane
insurance and/or that the purchase of hurricane insurance increased Plaintiff's
balance on the Note and triggered the change in his monthly payment due.  *See*
Doc. No. 1-2, FAC ¶ 18.  Rather, it is undisputed that the Mortgage requires
Plaintiff to maintain "hazard" insurance on the Property, which includes hurricane
coverage, and further authorizes Defendant to purchase this insurance and charge
the premium to Plaintiff's account if Plaintiff does not obtain it himself.  Doc. No.
19, Def.'s CSF ¶¶ 6-7.  And Defendant's purchase of hurricane insurance did not
affect Plaintiff's principal balance -- rather, Defendant charged the premium to
Plaintiff's account as an escrow advance.  *See* Doc. No. 19-7, Def.'s Ex. 4 at ll.
157-58.  Indeed, even though the escrow distribution was credited in February
2011, Plaintiff's monthly payment remained $1,334.13 until May 2011, when his
monthly payment increased as a result of Plaintiff's balance reaching 115% of the

initial principal amount.  *Id.* at ll. 254

Finally, no genuine of material fact exists that Defendant breached the Loan by returning Plaintiff's payments without crediting Plaintiff's account beginning in February 2013.  *See* Doc. No. 1-2, FAC ¶ 23.  The undisputed evidence establishes that as of February 2013, Plaintiff had been in arrears on his mortgage loan for many months, *see* Doc. No. 19-7, Def.'s Ex. 4, at ll. 1-154,[5] and the Mortgage specifically authorizes the return of any payment or partial payments if such payment is insufficient to bring the Loan current.  Doc. No. 19, Def.'s CSF ¶ 8.

b.     *Allegations for which a genuine issue of material fact exists*

A genuine issue of material fact exists as to Plaintiff's claim that Defendant failed to mail notices to his P.O. Box.  *See* Doc. No. 1-2, FAC ¶¶ 16, 20. In particular, the Note and Mortgage require Defendant to provide Plaintiff notices, and state that notice is deemed to have been given when mailed by first class mail to the notice address (*i.e.*, the Property Address) in the Mortgage and Note.  *See* Doc. No. 19-4, Def.'s Ex. 1 § 8; Doc. No. 19-5, Def.'s Ex. 2 § 15.  The Mortgage and Note also provide, however, that Plaintiff may designate a different address for

---

[5]  And to the extent Plaintiff asserts that Defendant falsely asserted that Plaintiff is in arrears on the mortgage loan, *see* Doc. No. 1-2, FAC ¶¶ 29-30, the undisputed evidence establishes that since May 2011, Plaintiff has failed to keep the Loan current.  *See generally* Doc. No. 19-7, Def.'s Ex. 4.

such notices.  *Id.*  Viewed in a light most favorable to Plaintiff, the evidence

establishes that IndyMac, Defendant's predecessor, mailed correspondence to

Plaintiff's P.O. Box.  Doc. No. 27-1, Pl.'s Decl. ¶ 6.  From this fact, it is reasonable

to infer that Plaintiff had designated his P.O. Box to receive all mailings.  And

once Defendant assumed the role as servicer and assumed the Note/Mortgage, it

failed to mail correspondence to the previously-designated P.O. Box.  Instead,

Defendant mailed correspondence to the Property Address (which Plaintiff never

received until Plaintiff again designated his P.O. Box in June 2011).  *See* Doc. No.

19, Def.'s CSF ¶ 11.  By June 2011, however, Defendant had already procured

hurricane insurance on the Property, increased Plaintiff's monthly fee, and

attempted to deduct this increased amount from Plaintiff's bank account without

Plaintiff receiving any notice.  These facts, if proven, suggest that Defendant

breached the notice provisions of the mortgage loan and caused Plaintiff damages.

        The court also finds that a genuine issue of material fact exists as to

whether Defendant's purchase of hurricane insurance caused Plaintiff to incur any

late fees and/or charges that were not reversed once Plaintiff established that he

had obtained his own insurance.  *See* Doc. No. 1-2, FAC ¶¶ 22, 23-25.  Defendant

charged the hurricane insurance as a credit advance in February 2011, *see* Doc. No.

19-20, Def.'s Ex. 14, and told Plaintiff in May 2011 that the escrow advance would

be spread over six months starting in July 2011, where his total monthly payment would increase to $4,352.65. *See* Doc. No. 19-11, Def.'s Ex. 6. Although Defendant ultimately reversed the escrow advance on September 19, 2011, Doc. No. 19-7, Def.'s Ex. 4, Defendant has not addressed whether any of the late fees and charges Plaintiff incurred over this time period are attributable to the purchase of the hurricane insurance. *See id.* ll. 133-146. As a result, even though Defendant reversed the escrow advance, a question remains as to whether Plaintiff incurred additional fees stemming from the hurricane insurance that were never credited back to his account.[6]

The court therefore GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim.

### 2. *Breach of the Covenant of Good Faith and Fair Dealing (Count 5)*

Defendant argues that Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law because it amounts to a claim for bad faith, which Hawaii courts have held does not exist when directed towards a mortgage loan contract. *See* Doc. No. 18-1, Def.'s Mot. at 11-12. In opposition, Plaintiff attempts to circumvent the well-established caselaw cited by Defendant,

---

[6] Although Defendant's counsel asserted at the July 28, 2014 hearing that all late fees and charges were attributable to Plaintiff's failure to pay the monthly fee on the mortgage and not attributable to the hurricane insurance, the evidence presented does not address this issue.

*see, e.g.*, *Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1139 (D. Haw. 2012), and instead argues that he is not asserting a claim for bad faith, but rather a contractual breach of the obligation of good faith and fair dealing.  Doc. No. 27, Pl.'s Opp'n at 13-14.  Regardless of Plaintiff's spin, the claim fails under Hawaii law.

Plaintiff is correct that in Hawaii, commercial contracts are subject to a statutory duty to perform in good faith, *see* HRS § 490:1-304, and Hawaii law recognizes that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 920 P.2d 334, 337-38 (1996) (citations omitted).  But as this court has explained, "although commercial contracts for 'sale of goods' . . .  contain an obligation of good faith in their performance and enforcement [in HRS § 490:1-304], this obligation does not create an independent cause of action."  *Au v. Republic State Mortgage Co.*, 2012 WL 3113147, at *10 (D. Haw. July 31, 2012) (quoting *Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1147 (D. Haw. 2011)); *see also Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006)).  Rather, Plaintiff at best may assert a breach of contract claim, which he has already done in Count 1.  *See Mizukami v. Am. Home Mortg. Servicing Inc.*, 2014 WL

198809, at *5-6 (D. Haw. Jan. 16, 2014) (explaining that the plaintiff may either allege facts establishing one of the exceptions allowing tort damages for a breach of the duty of good faith and fair dealing, or assert a breach of contract claim).

The court therefore GRANTS Defendant's Motion for Summary Judgment on Plaintiff's breach of covenant of good faith and fair dealing claim.

### 3.    *Breach of Fiduciary Duty (Count 7)*

Defendant argues that summary judgment should be granted on Plaintiff's claim for breach of fiduciary duty because lenders and loan servicers owe no fiduciary duties to their borrowers, and there are no "special circumstances" between Plaintiff and Defendant that would create such relationship. Doc. No. 18-1, Def.'s Mot. at 12-13. The court agrees.

This court follows "the well-settled proposition that a borrower-lender relationship is not fiduciary in nature absent some special circumstances." *See, e.g.*, *Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1140 (D. Haw. 2012) (discussing *McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763, at *5 (D. Haw. Nov. 17, 2010)); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1100 (D. Haw. 2011) ("In *McCarty,* this court set forth a myriad of caselaw for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature."); *see also Anderson v. Cent. Pac. HomeLoans, Inc.*, 2011 WL 3439939, at

*6 (D. Haw. Aug. 8, 2011) ("Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard 'arms-length business relationship' applies.") (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883 (9th Cir. 2007)).  And there is no evidence of any "special circumstances" in this case; rather, Plaintiff's assertions of wrongdoing by Defendant are all in the scope of a usual lender-borrower relationship.

In opposition, Plaintiff argues that special circumstances exist in this case because Defendant excessively controlled and/or dominated Plaintiff by refusing to accept facsimile transmissions verifying Plaintiff's hurricane insurance coverage.  *See* Doc. No. 27, Pl.'s Opp'n at 15-16.  Although some courts have recognized that a fiduciary duty may arise where the lender "excessively controls or dominates the borrower," *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002), this exception applies "only where the level of control is so extreme that the borrower is for all intents and purposes acting *against its will*."  *Periguerra v. Meridas Cap., Inc.*, 2010 WL 395932, at *7 (N.D. Cal. Feb. 1, 2010) (citing *Credit Managers Ass'n of S. Cal. v. Superior Court*, 124 Cal. Rptr. 242, 247 (Cal. App. 1975)); *see also Cannon v. U.S. Bank, NA*, 2011 WL 2117015 (D. Haw. May 24, 2011) (restating rule in *Periguerra*).

Viewed in a light most favorable to Plaintiff, Defendant's rejection of Plaintiff's facsimiles does not suggest excessive control.

The court therefore GRANTS Defendant's Motion for Summary Judgment on Plaintiff's breach of fiduciary duty claim.

### 4.    *Unfair Trade Practices (Count 4)*

Focusing on Plaintiff's allegations regarding the purchase of hurricane insurance, Defendant argues that summary judgment should be granted on Plaintiff's claim for unfair or deceptive acts or practices ("UDAP") in violation Hawaii Revised Statutes ("HRS") § 480-2 because Defendant's purchase of this insurance is not unfair or deceptive.[7]

The court agrees with Defendant that Plaintiff cannot base a UDAP claim on Defendant's purchase of hurricane insurance standing alone.  It is undisputed that the Mortgage (1) requires Plaintiff to maintain "hazard" insurance on the Property, which in Hawaii includes comprehensive windstorm (including hurricane) coverage ("hurricane insurance"), Doc. No. 19, Def.'s CSF ¶ 6, and (2) authorizes Defendant to purchase this insurance and charge the premium to

---

[7] Defendant also argues that this claim must be dismissed because the FAC fails to provide specific facts in support of this claim.  Doc. No. 18-1, Def.'s Mot. at 18.  Although such argument may be appropriate on a motion to dismiss, Defendant brings its motion as one for summary judgment.  And in any event, the FAC incorporates by reference the allegations of the preceding claims, which detail the relevant events.  *See* Doc. No. 1-2, FAC ¶ 43.

Plaintiff's account if Plaintiff did not obtain it himself.  *Id.* ¶ 7.  And the court agrees with *Ramelb v. Newport Lending Corp.*, 2014 WL 229186, at *5 (D. Haw. Jan. 14, 2014), which addressed these same basic facts, and held that such facts do not support a UDAP claim because the charges were "contractually authorized and fully and repeatedly disclosed to Plaintiffs." *Id.* at *5.  Where the Mortgage authorizes such charges, Defendant's purchase of hurricane insurance, standing alone, does not have "the capacity or tendency to mislead or deceive" necessary to support a UDAP claim.  *See id.*; *see also Compton v. Countrywide Fin. Corp.*,  --- F.3d ----, 2014 WL 3805529, at *6 (9th Cir. Aug. 4, 2014) (holding that a complaint must adequately allege "that the lender used unfair or deceptive acts in its relationship with the borrower").

This does not end the inquiry, however, where Plaintiff's UDAP claim is not based simply on Defendant's purchase of hurricane insurance.  Rather, Plaintiff's UDAP claim is based on the same basic allegations of the breach of contract claim -- that Defendant increased Plaintiff's required monthly payment before September 2012, refused to accept Plaintiff's partial payments after Plaintiff went into arrears on the Loan, sent notices to the Property Address instead of his P.O. Box, and failed to reverse all charges related to the hurricane insurance after Plaintiff obtained his own insurance.

As described above for the breach of contract claim, there is no genuine issue of material fact that the Note gave Defendant the authority to raise Plaintiff's monthly payment once the balance owed was 115% of the original principal, and also authorized Defendant to refuse to accept partial payments. Given that these acts were contractually authorized and disclosed to Plaintiff, there is no basis for the court find them deceptive or misleading to support a UDAP claim. *See id.* Fact questions remain, however, regarding the lack of notice provided to Plaintiff in increasing in the monthly payment and procuring hurricane insurance for the Property, as well as whether all fees and charges related to the hurricane insurance (if any) were reversed.[8]

The court therefore GRANTS Defendant's Motion for Summary Judgment to the extent Plaintiff bases his UDAP claim on Defendant raising the monthly payment, purchasing hurricane insurance, or refusing partial payments, and DENIES the Motion to the extent Plaintiff bases his UDAP claim on Defendant taking actions on Plaintiff's mortgage loan without proper notice and failing to reverse all fees regarding the hurricane insurance.

---

[8] The parties did not brief, and the court is not determining at this time, whether these events, standing alone, support a UDAP claim. The Ninth Circuit has recently held, however, that "borrowers are not obliged to show that the lender owed the borrower a common law duty of care to state a claim under sections 480-2 or 480-13." *Compton v. Countrywide Fin. Corp.*, --- F.3d ----, 2014 WL 3805529, at *5 (9th Cir. Aug. 4, 2014).

## 5.    *Negligence/Gross Negligence (Count 6)*

Defendant argues that summary judgment should be granted on Plaintiff's claim for negligence and/or gross negligence because Plaintiff cannot establish that Defendant owed him a legal duty of care. Doc. No. 18-1, Def.'s Mot. at 20-21. The court agrees.

"This district court has frequently recognized the principle that lenders generally do not owe their borrowers a duty of care sounding in negligence." *Crilley v. Bank of Am., N.A.*, 2013 WL 1767704, at *5 (D. Haw. Apr. 24, 2013) (citing *McCarty*, 2010 WL 4812763, at *6). This court has also "recognized that a loan servicer does not owe a duty of care to a borrower in a loan it services, unless the loan servicer's activities exceed its traditional role." *Id.* (citing *Vertido v. GMAC Mortg. Corp.*, 2012 WL 139212, at *11 (D. Haw. Jan. 17, 2012)). Plaintiff presents no facts suggesting that he and Defendant had some relationship beyond that of a basic borrower/lender/servicer that could support a duty.

In opposition, Plaintiff simply falls back on his previous claims, asserting that Defendant owed Plaintiff a duty of good faith and fair dealing, as well a fiduciary duty due to Defendant's excessive control. *See* Doc. No. 27, Pl.'s Opp'n at 19. For the same reasons described above, however, such claims fail and

are therefore not a basis to establish an independent duty supporting a negligence claim. The court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's negligence claim.

### 6. Declaratory Relief (Count 2)

Defendant argues that Plaintiff's claim for declaratory relief is not cognizable as an independent cause of action. The court agrees.

As this court has explained in other actions, a claim for declaratory relief is not cognizable as an independent cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, where it is based on Defendant's past wrongs and simply duplicates Plaintiff's other causes of action. *See, e.g.*, *Teaupa*, 836 F. Supp. 2d at 1092 (citing *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)); *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (citation omitted); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for

declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").

Plaintiff seeks a declaration that (1) "he has not breached the terms of the note and mortgage, is not in arrears on the note, owes no late fees to [Defendant], and is entitled to correction of [Defendant's] accounting and adverse report(s) to credit agencies about Plaintiff;" (2) Defendant "is not entitled to hold Plaintiff in default or foreclose on the note and mortgage;" and (3) "Plaintiff has properly tendered all payments due and that the note and mortgage are not in default." Doc. No. 1-2, FAC ¶ 37. Because these requests for relief are all based on Defendant's past actions and duplicate Plaintiff's claims for breach of contract and UDAP, Count 2 is not a cognizable claim for declaratory relief.[9]

In opposition, Plaintiff recognizes that this court has dismissed similar federal claims for declaratory relief, and argues that his claim is different because it is brought pursuant to HRS § 632-1 and not 28 U.S.C. § 2201. *See* Doc. No. 27, Pl.'s Opp'n at 20. HRS § 632-1, however, is no broader than the Declaratory Judgment Act -- *Kaleikau v. Hall*, 27 Haw. 420 (1923), explains that courts should not exercise jurisdiction over Hawaii state law declaratory judgment actions where

---

[9] At the July 28, 2014 hearing, Plaintiff's counsel asserted that since the filing of the Complaint, Defendant has filed a foreclosure action, which may support a claim for declaratory relief. Such facts, however, are not currently before the court.

the wrongful acts complained of have already been committed and are encompassed by other causes of action. *Id.* at 428; *see also Kaaa v. Waiakea Mill Co.*, 29 Haw. 122, 127 (1926) ("[T]his court has held that the courts will not entertain jurisdiction under the Declaratory Judgment Act when it appears that the wrongs complained of have already been committed and that a cause of action already exists, but will leave the injured party to seek redress according to the established methods of procedure."). Thus, Plaintiff's claim fails under either statute.

The court therefore GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claim for declaratory relief.

### 7.    *Injunctive Relief (Count 3), and Accounting (Count 9)*

Defendant argues that Plaintiff's claims for injunctive relief and an accounting fail because they are not stand-alone causes of action. Doc. No. 18-1, Def.'s Mot. at 22-23. In opposition, Plaintiff asserts that even though they are not stand-alone claims, these claims should not be dismissed because he has asserted other valid claims that entitle him to this relief. Doc. No. 27, Pl.'s Opp'n at 20. Plaintiff's argument does not save these claims.

Injunctive relief is a remedy and not a claim. *See, e.g.*, *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1133 (D. Haw. 2011) ("[A] claim for

'injunctive relief' standing alone is not a cause of action."); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *4 (D. Haw. Nov. 30, 2011) (same). Thus, if injunctive relief is proper, it will be because Plaintiff prevails on an independent cause of action.

As for an accounting, this court has rejected similar claims in other cases. *See, e.g.*, *Lindsey v. Meridias Capital, Inc.*, 2012 WL 488282, at *7 (D. Haw. Feb. 14, 2012), *Gaspar v. Bank of Am., N.A.*, 2010 WL 4226466, at *7 (D. Haw. Oct. 18, 2010). *Gaspar* explains that "[t]he action of accounting is designed to provide a remedy to compel a person who, by virtue of some confidential or trust relationship, has received or been entrusted with money or property belonging to another or which is to be applied or disposed of in a particular manner, to render an account thereof." *Id.* (quoting *Block v. Lea*, 5 Haw. App. 266, 277, 688 P.2d 724, 732-33 (1984)). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law." *Porter v. Hu*, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007) (citation and quotation signals omitted).

Plaintiff has offered no basis explaining why he is entitled to an accounting from Defendants where there is no evidence of any special relationship beyond that of mortgagor/mortgagee, or any basis supporting that no adequate

remedy at law exists, such as, for example, that an accounting is necessary because the mortgage accounts are so complicated that only a court can discern them. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478-79 (1962). Rather, Plaintiff may seek such information through discovery as opposed to a claim for relief.

The court therefore GRANTS Defendant's Motion for Summary Judgment on Plaintiff's claims for injunctive relief and for an accounting.

### 8. *Infliction of Emotional Distress (Count 8)*

Defendant makes the limited argument that Plaintiff's claim for infliction of emotional distress fails where all of Plaintiff's other claims fail. *See* Doc. No. 18-1, Def.'s Mot. at 22-23. Without addressing the merits of Plaintiff's claim, the court DENIES Defendant's Motion for Summary Judgment on Plaintiff's infliction of emotional distress claim given that genuine issues of material fact exist regarding aspects of Plaintiff's breach of contract and UDAP claims.

## B. Motion for Rule 11 Sanctions

Defendant argues that it is entitled to Rule 11 sanctions because the FAC lacks legal and/or factual basis. As determined above, however, Plaintiff has established a genuine issue of material fact as to some of his claims. There court therefore DENIES Defendant's Motion for Rule 11 Sanctions.

# V. **CONCLUSION**

Based on the above, the court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, and DENIES Defendant's Motion for Rule 11 sanctions. Remaining in this action are Plaintiff's claims for breach of contract and UDAP to the extent based on Defendant's failure to provide proper notices and/or reverse all charges regarding the hurricane insurance, and for emotional distress.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 11, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Gray v. OneWest Bank, Fed. Savings Bank*, Civ. No. 13-00547 JMS-KSC, Order Granting in Part and Denying in Part Defendant's Motion to the Extent it Seeks Summary Judgment, and Denying Defendant's Motion to the Extent it Seeks Rule 11 Sanctions, Doc. No. 18